I believe the time needs to be 10 on this one. Thank you. MS. NEUMANN, REPRESENTING THE APPELLANT IN THIS CASE, THE SUPREME COURT Good morning, Your Honors, and may it please the Court. I'm Elizabeth Neumann, representing the appellant in this case. Your Honors, I'd like to focus on the length of the supervised release term this morning. And unless the Court has questions about the government's waiver argument, I'd like to jump into the merits of the supervised release term. Go ahead. I can do that, but I hope you'll address on the meds. I have some questions on that. So save yourself a little time to do that. I'm sorry, Your Honor, which was it? On the meds. The meds. Medication issue. I have some questions about that, but please go ahead. Since supervised release, the length of the term, is part of a sentence, then like any other part of a sentence, such as the custody part of the sentence, it has to be as short as possible, consistent with the Court's sentencing goals. And here the Court's sentencing goal was protection of the public. And it has to be justified, just as any other sentence has to be justified under 3553A. And I would submit to the Court that when a sentence is infinite, as it is in this case with the supervised release term being for life, the Court, the district court has a special obligation to be particularly careful and particularly searching, particularly explicit in its justification of the imposition of the term. Our argument here, Your Honors, is narrow. It's that the district court here did not make adequate findings justifying a term that lasts forever, that the Court never said why something less than forever might not work just as well consistent with its goals. What's your best case that indicates that when the Court imposes a life term of supervised relief that we should engage in heightened scrutiny? There isn't any authority that I know of, Your Honor, that's anything like directly on point. I would argue from a position of fundamental fairness and basic due process that when a court has – when a court imposes a term that never ends, it has to be particularly careful because the consequences of its actions are particularly profound. So basic fundamental fairness, due process through generalized concerns there, Your Honor. Here it seems that the district court's justification for the infinite term was the prior offense that Mr. Cope had sustained 25 years earlier. Congress – I mean, the term isn't exactly infinite. I mean, he'll be 68 when he gets out, so it's a lifetime term. But realistically, that's probably like supervised release for 15 to 20 years. Conceivably, Your Honor. But it's also conceivable that he could live a great deal longer than that. It's true that he has back problems, but it's not so clear that he has any sort of systemic problems. He will be 68 when he gets out, but in today's society, it's certainly not unknown for people to reach the age of 100 or more. And I would certainly not argue that a 68-year-old man, even one with back problems, is an old man. I would hope not. Particularly today, yes. But it is sort of odd when you talk about a lifetime term for a 20-year-old that has a different meaning for somebody who's older. And so, for example, you might have the same practical result if the judge had imposed a 20-year term in this case, right? The judge appeared to be at one point – the record's not clear, and perhaps it's a transcription problem, but the judge appeared at one point to be flirting with the idea of imposing a 10- to 15-year term. Although the Court never said why a 10-year term wouldn't be enough or a 15-year term or how to distinguish between those two things, but then ultimately said in its final summation about the sentence that it hoped that Mr. Cope would live a great deal longer than the 10 or 15 years that it apparently had been thinking about but not really talking about very much during the sentencing hearing. I agree with you. Does he have the ability to, at any time once he's out of prison and under supervised release, to move the Court to limit the term of supervised release? After a year, yes, Your Honor. There is that possibility. But what we would hope would be that the Court, that this Court, would instruct the district court and give it some guidance about how close the link has to be or what sort of facts would justify a lifetime term of supervised release. Otherwise, we're in exactly the same position we were in at the time of sentencing, where Mr. Cope had had a prior, but 25 years earlier, with no problems in the interim of this nature, and yet the district court still said, based on that prior and even acknowledging, I believe, that nothing in the interim had happened of this nature, imposed a term of supervised release that would last until Mr. Cope died. And Judge Fischer had some questions that he wanted to ask. Yes. On the medication, paragraph 13, I'm trying to understand, make sure I understand your argument. There will be a, presumably, if we agree, that there should be a remand for more specific findings. With regard to the medication provision, what are you looking for with respect to the clarification, if any, with regard to that proviso? If I'm understanding the Court's question correctly, it's that, assuming that the Court agrees that a remand is required because no notice was given? Correct. So that there have to be specific findings and linkage and all of that. Right. Well, there would be the same sort of findings, Your Honor, that could the court that the district court would have to make with respect to the penile plethysmograph condition, a condition that it was narrowly tailored to achieve whatever the goals of the condition were, that it was the least restrictive condition possible, consistent with those goals. And specifically here, the medication issues are that there's that it's not the least restrictive condition available. What are you proposing, that there be no medication or that there be specified medication and specified doses? No, Your Honor. What we'd be proposing is something a little bit broader and not so medication-specific or particular medication-specific, that there be advance notice to defense counsel before any sort of medication condition be proposed. Well, you see, you're not helping me. We've got a craft. You just asked us to give guidance to the district court, and we do have our own case law that says if there's psychotropic drugs, there has to be, there's a whole regime that has to be followed. Are you asking for that for all kinds of medication or just psychotropic or? Oh, no, Your Honor. There's not really any indication in the record that psychotropic drugs precisely are involved here, but that's one of the problems, that there's no indication as to what sort of medication might be prescribed. The condition only says he must take all prescribed medication. It could involve chemical castration, for example. It could involve, conceivably, I suppose, psychotropic medication. It could involve really the whole, you know. What if it's Valium, for example? I'm sorry? What if they want to have him on a regime where there's Valium? Is that something that you consider psychotropic and would have to be given notice of? And what would the district court do with that? Well, I think the district court, first of all, we're envisioning on remand a situation in which the probation office would have to come to the district court and say, for these treatment-related reasons, we would like Mr. Koch to have to take this particular medication, which would accomplish this particular goal related to this particular treatment condition. And, therefore, we're imagining a system that's really different with the burdens very differently placed than they are at the moment. What is the order – what is the supervised release order going to say, then, that when he comes out of prison, at that point in time, there shall be a showing as to what kind of medication is necessary, or? No, Your Honor. Under the supervised release system, the probation office can come in at any time and request a modification, asking for – But what do you want the supervised – what do you want this order to say now? That's what I'm trying to – he's going to be in prison. He's going to be treated, presumably, in some kind of fashion at that time, correct? I believe so, Your Honor. And does this paragraph 13 apply to that? No, Your Honor. It's quite separate. Right. So, what you're asking for is what degree of specificity today, when it's imposed by the district court, what is the regime you're asking for? A current listing of anticipated drugs with a showing today, as to why they're necessary? No, Your Honor. I don't believe that that would be realistic, forecasting so far into the future. I believe that the more realistic approach would be that if the probation office, in conjunction with the treatment provider, believes that a psychotropic medication is necessary, that there shall be advanced notice to defense counsel and, of course, to the government, with the chance to litigate the propriety of it, and a court approval required for it, so that – So you want a process. Yes. Yes. Yes. A process. Ms. Gould, do you have any further questions? I don't have further questions. All right. We'll give you a couple minutes for your final comment. Thank you, Your Honor. Thank you, Your Honor. Good morning. May it please the Court, Andrea Ressi for the United States. Professor, would you mind starting with the medication question? Sure. I know I'm taking it out of order from your planned remarks, but it does disturb me a bit that – and I know this is part of the forum order – or orders that we've been seeing, but the requirement you take all prescribed medications is pretty broad. It doesn't say by whom, it doesn't say when, and in this case, we have a lifetime of supervised relief – release conditions imposed. I agree that it is a broad condition. However, it is contained as part of the sex offender treatment condition, and in this kind of circumstance, the district court – I don't – as Ms. Newman was discussing, it may not be realistic at this point in time for the district court to know 10 years from now what medications a sex offender will need as part of his treatment. So I think the condition is worded the way it is to allow a psychiatrist, a psychiatrist, to determine what sort of medications will be needed at that time. It doesn't say that, though. That's what's sort of disturbing. We've had a couple of these cases, and, for example, the hypothetical given, what if he misses an antibiotic, he doesn't take that. And the answer is it's arguable that that's a violation of his release conditions. Now, you would say that doesn't make sense, but it's awfully broad language. It doesn't say who prescribes, what prescribes, or you have to kind of read through the lines to say, well, it has to be in connection with the sex offender treatment. That's true, Your Honor, although I think generally supervised release conditions are worded broadly to allow both the probation officer and any treatment providers to do what is necessary to rehabilitate this defendant. I think that the case of the psychotropic drugs? Well, I think that as this Court said in Williams and seemed to reiterate in the recent Ross decision, psychotropic drugs impose upon a significant liberty interest. I don't think... How about chemical castration? There's certainly nothing that... You don't think that's a significant invasion of personal... Certainly it is, but I think that if you're talking about sex offender treatment, you're talking about something that's decided upon by a clinician as necessary. Really? Is that right? So there's no improper delegation here of authority? Of course there could be, but I think that we would be... You can't be suggesting that a clinician can decide to chemically castrate a sex offender just because he's a sex offender. No, I do not believe that, and I don't believe that there's any basis to conclude that that's what's happening as part of... Well, what does prescribed medication mean here, then? Well, it can obviously be read that broadly, although I do think that if there was a situation where a treatment provider elected to prescribe chemical castration as a form of treatment, the defendant could certainly make a motion to the district court. So you put the burden on a defendant, hoping he would be smart enough to know that he could do that, challenge it, instead of putting the burden on the government to justify, have the psychiatrist come in and tell the court why this extreme step is necessary? Well, unfortunately, at that point in time, it would be difficult for the burden to be on the government at the time that it is imposed, because the government... I assume that the burden could be on the probation officer if... Okay, that's the government, isn't it? Correct, yes. So this court could fashion a condition where... Haven't we already done that with psychotropic drugs? What if they decide to give him a psychotropic drug? Yes, I think... Could they just do that under this proviso without coming to the court and making the adequate showing? It's not entirely clear, but based upon Williams, I think that a reasonable probation officer and the government would need the district court to make further findings for any mind-altering drug. So does the government really resist the notion that there'd be a process in a supervised release order like this to make it clear that before a radical step of something like chemical castration would have to be upon application to the court with a proper showing for its necessity? The government is not opposed to that. I think the difficulty is where to draw the line as far as, does the district court have to list every possible medication? How specific... Why not? I mean, in terms of ensuring that we don't have any sort of interference with the doctor-patient relationship with us, because basically what you're saying is, these are medications prescribed by a counselor employed by the state, and he has to take it as a condition, even if his own doctor thinks it's bad, can't, it'll interfere with other medications, and so forth. So why shouldn't we extend Williams to cover all medications? What's wrong with that? Well, I think that both the Weber decision involving PPG testing and Williams, which didn't really involve supervised release in the same way this case does, but both of those cases I think are an exception to the general rule set forth in Reardon. And it depends upon how broad this Court wants that exception to be, how big the carve-out should be. Based upon the language in Reardon, supervised release conditions can be broad and general. Sure. But we're talking about medications somewhat different. So what medications would you think, would you argue, that we should allow, just to give an example, that should be allowed without any sort of court interference at all in terms of these treatments? Because typically they would be, they could be psychotropic, could be chemical castration. What other medications are we talking about in terms of sex offender treatment? Well, I think that realistically it could be anything. It could be high blood pressure medication. I mean, you could have a treatment provider saying, I want you to take everything you're supposed to be taking. I thought you said that didn't cover this. Do you think that's a high blood pressure medication as part of sex offender treatment? No. I'm not saying that that's obviously the goal of sex offender treatment or part of the goals. But, I mean, given it says all prescribed medication, a treatment provider who's trying to help this person may want him or her to take whatever medications they should be taking for their health and well-being. See, this is now you're getting back to where I started, because basically you said, no, we're not talking about antibiotics. We're not talking about the routine stuff. We're talking about stuff, well, drugs that are imposed as part of a critical sex offender rehabilitation treatment. Well, for instance, let's say a medication to treat depression, which could be something that falls within the sex offender treatment or falls outside, depending on, you know, someone could be required to take that regardless of whether they're a sex offender, but it may also assist in their sex offender treatment. Is that a psychotropic drug? And so hasn't the line already been drawn there by Williams? If the court believes that that, I don't know that, I don't know if that would be considered a mind-altering drug to the same extent as the drugs that were at issue in Williams. Well, you're having trouble deciding what's in or out. So that's what's troubling, I think, us, is we don't want to, we understand Reardon, we understand that there has to be professional judgment brought to bear, and we don't want to impose a regime, I assume, that has doctors having to run into the federal court every time they want to change a dosage on a prescription. On the other hand, as Williams makes clear, there's a category of drugs which are powerful and have lots of side effect implications. Chemical castration certainly seems to be within the realm of what Williams was concerned about. So as Judge Thomas is probing, what does the government have to offer in terms of helping to draw the line other than to put it all into a general terminology and then put the decision on whether or not to resist or not, and then what does the district court do when the prisoner raises it? Well, I do think at that time, if the prisoner were to raise it, the district court could bring in the person's treatment provider and have that doctor explain why this is required. Why shouldn't, at least in certain serious drug treatments, that just be an automatic burden on the government, whether it's the probation office or it's the, you know, the Bureau of Prisons or whatever? Well, it could be. The condition could be fashioned in such a way that, you know, psychotropic drugs, drugs that have, I mean, it's very difficult to know exactly where to draw the line, but in those circumstances, the probation officer must come to the district court. It could be, but they didn't. It didn't. And in the form that's used now, it just says all prescribed medication because we've seen this in other cases. So that presents two problems. One is, what are we talking about? And I thought we started off by saying, you're saying it had to have a nexus to the treatment. And then I think you, perhaps, it's a little broad in that, and two, what about all these other aspects? Because it's not obvious to me how any drug wouldn't involve psychotropic, either in the psychotropic category or category like chemical castration that would infringe on liberty interests. We're not trying to tie the hands of anyone, but if we're struggling this much, and if you're struggling this much, defense counsel is, what's the probation officer supposed to do? And what's the district court supposed to do? So it's a difficult area. We've taken you through your time, but you probably want to talk about a few more things. So we'll give you a couple of minutes and we'll turn into this. I have one question on the medication. Would the government oppose a requirement that the medication provision have a clause relating to it stating that it's medication that's reasonably necessary for his sex offender treatment? No, the government would have no objection to that. The problem being, I think defense counsel would raise the same objection, which is, who makes that decision as far as what is reasonably necessary? But I think... Right. But that takes care of my first problem, is that it's, are we talking about prescriptions that he's getting from his own doctor or part of the treatment? I mean, that's not stated and it's not clear to me, at least. Yeah. And the government would have no objection to that type of limiting language or explanatory language. Turning to the supervised release condition, both Congress and the Sentencing Commission have stated their intent to impose lifetime supervision on sex offenders. It is specifically recommended in the guidelines and here, the district court properly considered the 3553A factors and concluded that 3 years, which was the lowest possible recommendation in the guidelines, was not sufficient and that based on the nature of the offense, the types of materials and the need to protect society, specifically children, that lifetime supervision was warranted here. What do we do with the fact that the district court got his criminal history wrong in making that assessment? It may or may not make any difference in terms of the analysis in one sense. I mean, if you read what the district court was saying, I have the sense that, well, he may have gotten the criminal history, the judge may have gotten the criminal history wrong, but probably was going to impose it anyway. On the other hand, we don't know that. And it does give one pause when you're imposing a lifetime of supervised release that the district court didn't have the antecedents right. Well, first, I think that you're correct that I don't think his criminal history was the main factor in imposing this term. The district court didn't mention that as one of the reasons he was imposing it. Also, factually, while the district court stated that defendant had been convicted of molesting his daughter, which was factually incorrect, in the PSR, defendant did in fact state that he had been convicted of molesting his stepdaughter. So I think the district court just mischaracterized the daughter for stepdaughter. And the PSR also states that he was convicted in 1980 for assault on two girls. Both names are listed. So that's what the district court was referring to. So I think that the district court actually had a fairly accurate assessment of defendant's criminal history, which I think ultimately did not impact his – the district court's view here, because the government argued its importance. But that is not the basis for the district court imposing lifetime supervision. The primary basis was the district court's view that it was necessary to protect the public. If the Court has that inquiry, they're all submitted. Thank you. Thank you. I think the four minutes on the clock equalize that. Thanks, Your Honor. First, on the last point that government counsel raised, stepdaughter versus daughter, the district court did mischaracterize that, and I would suggest that that's a fairly serious mischaracterization. It's certainly not good, you know, it's morally appropriate. Why is it serious? Because there's a difference between molesting a child and molesting a child who – with incest on top of it. I would argue that there's – They're both pretty serious, aren't they? Oh, they're both extremely serious, Your Honor, and we're not here to downplay the seriousness of either offense, but there's an added level of moral condemnation, I believe, that comes along with the incestuous aspect of it. But I want to – Well, perhaps, but the condition was imposed to protect the community. Certainly, Your Honor. But if the conditions are necessary to protect the community, then it has to be linked back to the particular circumstances of this defendant's, this man's, life, life history and circumstances, and if you get those wrong, then you may be getting the entire justification wrong. If the basis is wrong, then the conclusion may be wrong as well, particularly as the Court points out, when there's a need to be careful because of the lifetime nature. But more – turning back to the issue on the – of the treatment condition, Judge Gould, I believe, suggested a modification or a proposal in which the – if I'm understanding it correctly, in which the condition would stand unchanged except that the medication portion would say medications that are reasonably necessary for treatment. And my response to that proposal would be that that's precisely the sort of condition or modification that would require the process necessary to protect Mr. Cope's liberty interests, to make sure that it really is reasonably necessary, and so forth. All of the panoply of protections that Riggins outlines would be particularly necessary in a case like that. Okay. On that – on that point, I was just trying to find out whether the government would object to that. Like, I personally feel that there would have to be a process and some findings. Back on your – your life supervision, I must say I don't find persuasive the argument that your – that your client gets some mileage because he abused a stepchild rather than a biological child. In fact, statistically, there's probably more risk throughout his lifetime of some interaction with stepchildren than real children, than biological children at his age of 58. So why does – why does that distinction help him get a shorter term? It's not a big distinction, Your Honor, and I didn't want to belabor it, only that the government essentially equated the two things. And I wanted to point out that I think there's a level of moral condemnation that's slightly greater when it's your own biological child than when it's your stepchild. But neither of them is a commendable act. Yeah. There may be, but in terms of a need for supervision, he could come out of prison at 58 or 68. Sixty-eight, Your Honor. And remarry. He could marry someone who had a young child. So it seems like the need for supervision may be greater with the stepchild abuse than with a biological child abuse. I don't want to belabor the point, Your Honor. I think our broader point is that a prior conviction that's 25 years old loses some of its predictive force when you're considering whether to put somebody on supervised relief – release for life or supervised release for something less than what you assume his life expectancy will be. The Judge Gould's point is that, if anything, it cuts against your client. No, I understand that, yes. But I won't belabor that. Thank you, Your Honor. I appreciate that. If there are no further questions, we'll submit. Thank you, counsel. Thank you, Your Honor. The case is certainly submitted. Both.
judges: Thomas, Fisher, Gould